CASE 32—INDICTMENT—NOVEMBER 28.

## Brooks v. Commonwealth.

APPEAL FROM MORGAN CIRCUIT COURT.

1. CRIMINAL LAW—CONTINUANCE.—Where one is indicted on the second day of a term of court for a homicide committed on the first day thereof, and his trial set for the fourth day of the same term, upon the filing of his affidavit together with that of his attorneys, showing that the defendant ever since the killing had been in such a condition of nervous excitement and prostration that he had been unable to tell his attorneys anything about his defense, and the further statement of the attorneys that they had had neither sufficient time nor opportunity to make suitable preparation for the defense, a continuance should have been granted.

2. EVIDENCE—THREATS—MALICE.—General threats of the defendant of his intention to kill or injure some one are competent to establish general malice, although the threats may have had reference to no particular person .

3. SAME.—But the declaration of the accused made shortly before the killing that he "did not give a damn for hell; the West was his home," was not competent, because the words were not of a kind that indicated either motive or purpose to commit crime.

Brooks v. Commonwealth.

HOBBS & SCOTT FOR APPELLANT.

1. Under the circumstance in this case a continuance should have been granted. It was within the discretion of the trial court to have done so, under the provisions of section 185 of the Criminal Code, and his refusal to do so, in this case, was an abuse of that discretion.

2. The statements of the appellant made just prior to the killing, which were permitted to be given in evidence as general threats, where nothing more than the idle assertions of a drunken man, in no way connected with or directed at the deceased. The admission of this evidence was certainly prejudicial, as it was of such character as to have had great weight with the jury.

3. Putting the case in the strongest light for the Commonwealth, it is nothing more than a shooting and killing in sudden affray, and without malice aforethought or premeditation.

4. A new trial should have been granted because two of the jurors were related to the deceased and failed to disclose that fact when asked about it.

W. W. McGUIRE ON SAME SIDE.

1. The "general threats" given in evidence by the Commonwealth to show malice were incompetent, because it fully appears that there had not only been no previous trouble between the parties, but they were good friends.

2. The evidence in this case is not sufficient to warrant a conviction for murder, as there is not only no proof of malice, but direct evidence that the killing was done in sudden heat and passion.

3. The continuance should have been granted so as to give the defendant's attorneys an opportunity to understand and prepare his defense, and so that the excitement and prejudice might subside sufficiently to enable the defendant to have a fair trial.

W. S. TAYLOR FOR APPELLEE.

1. The continuance was properly refused because the affidavit therefor did not state that any subpoena for witnesses had been issued or applied for, and the names of no witnesses were given by whom any facts constituting a defense could be shown, in fact there was nothing in the affidavit going to show that the defendant could or would make any good defense, if the case was continued.

2. The granting of a continuance is in the discretion of the trial court, and in this case that discretion was not abused.

3. The evidence of the general threats was competent to show malice, and it is not necessary that the statements should have been directed especially at the deceased. (A. & E. Enc. of Law, vol. 9, p. 542; 80 N. C., 353; 58 Penn. St., 9; 28 W. Va., 297.)

*JUDGE LANDES DELIVERED THE OPINION OF THE COURT:*

The appellant was indicted by the grand jury of Morgan county for the murder of Gus McKenzie, and upon trial was found and adjudged guilty as charged, and is now under sentence of death therefor. A motion for a new trial having been made and overruled, this appeal is prosecuted from that judgment.

The killing occurred in the town of West Liberty on the first day of the June term, 1896, of the Morgan Circuit Court, about one hour before sunset. The appellant was promptly arrested and imprisoned, and by about 10 o'clock a. m. of the next day the indictment was returned by the grand jury. On the same day the court ordered the case to be set down for trial on the fourth day of the term, and, the appellant being unable to employ counsel, the court appointed two of the attorneys of the court to defend him.

When the case was called for trial on the fourth day of the term the appellant, who had been confined in jail ever since the killing, made affidavit and by his counsel moved for a continuance of the case until the next term of the court to enable him to prepare for trial, without having had any witnesses summoned to testify in his behalf.

While no witnesses were named in this affidavit by

whom the appellant expected to be able to prove any material facts in his defense, it was stated in substance that the killing was done while both he and the deceased were under the influence of strong drink, and while they were engaged in a dispute and in the midst of great excitement, which was still prevailing in the county, and that he shot the deceased in self-defense; but so great was the excitement surrounding him, and such was his condition, that at the time he did not know who was present or by whom he could prove the facts to sustain his plea of self-defense; that he had not had time sufficient to prepare for his defense, and that, ever since the killing, he had been in such a condition of nervous excitement and prostration that he had been unable to tell his attorneys anything about his case.

Both of his attorneys made statements in support of the motion for a continuance, showing that they had neither sufficient time nor opportunity to make suitable preparation for the defense. One of them, who had been for many years in active practice both in criminal and civil cases, stated that the appellant was not able, on account of his nervous condition, to tell him who was present at the killing, and that, "on account of the state of public opinion and the additional facts, neither he nor his associate counsel knew the facts of the killing, and the defendant can not tell at this time who does know. He thinks it impossible to obtain a fair and impartial trial for the defendant at this term of the court." He further stated that he believed that "by the next term of the court the defendant can have the facts of

his case understood," and that "a trial of this case at this term of the court is to him a leap in the dark, and that he can not do the defendant justice in his defense if forced to try at the present term."

The motion for a continuance was overruled by the court and, exceptions having been properly taken, this is here complained of as error prejudicial to the substantial rights of the appellant.

It can hardly be said that the facts upon which the motion for a continuance in this case was based, as set forth in the affidavit of the appellant and the statements of his counsel, were technically legal grounds for a continuance. At the same time they were of such a character as would have warranted action by the lower court upon the motion favorable to the appellant in the exercise of a sound discretion conferred by the law.

Section 185 of the Criminal Code provides that if the defendant is in custody or on bail when the indictment is found "the trial *may* take place at the same term of the court, at a time to be fixed by the court."

In every prosecution before a trial can be lawfully had, the defendant must be "before the court" in some way or by some process, usually before the commencement of the term of court at which it is proposed the trial shall be had (Criminal Code, section 187); but the condition provided for by the section quoted is where a defendant is "before the court" on some charge before or at the time "the indictment is found." And the object of these provisions is to secure as speedy a trial in

all cases as may be consistent with the allowance of reasonable time for preparation, both for the Commonwealth and the accused.

In this case the crime with which the accused was charged was committed after the commencement of the term of the court at which the indictment was found, and he was indicted while in custody, and, therefore, "before the court" on the charge, but without any previous inquisition.

There is nothing in the record to show that the learned judge of the trial court, in overruling the motion for a continuance, was actuated by other than a high sense and purpose of fairness and duty, both toward the Commonwealth and the accused, yet, under the circumstances surrounding and growing out of this deplorable tragedy, and considering the pitiable condition in which the accused was found, we are of the opinion that he or his counsel, who were officers of the trial court and had undertaken the burden of defending the accused in obedience to its order, and whose statements ought to have had great weight with the court upon the question of continuance, did not have sufficient time to prepare, and in fact that they could not have made the proper preparation for the trial of the case at the June term of the court. In this view of the case the continuance asked for ought to have been granted by the trial court. This, we hold, would have been in harmony with the intent of the provision of the Code, to which reference has been made, and with the fundamental principles of the law that entitle all persons accused of crime

to a fair and reasonable opportunity to procure the attendance of witnesses in their behalf. Wills v. Commonwealth, 12 Ky. L. R., 111.

Over the objection of the appellant testimony was admitted by the trial court in behalf of the Commonwealth of general threats made by the appellant on the day and a short time before the difficulty in which the killing occurred, and the object of this testimony was to establish malice.

Henry Ross testified that about a half an hour before the killing the appellant came to the store where he was clerking, and that he asked him if he wanted anything, and that his answer was: "Yes; he wanted some damned man to jump on him, so that he could kill him. He had tried Jess Blair and James Blair, and they would not stand in."

Coon Rose testified that from twenty to thirty minutes before the killing the appellant came to where he was, about one hundred yards from the place where the killing occurred, and said he would "blow some damned man's lamp out."

Dan Caskey testified that a half hour or an hour before the killing the appellant came where he was, with James Blair, and said: "Boys, stay in town to-night; I am going to kill some damned man."

Grant Caskey testified that about an hour before the killing the appellant passed up the street by him, going in an opposite direction from the place where the killing took place, and said "he did not give a damn for hell; the West was his home."

It is claimed that the court erred in admitting this testimony.    It was error, under the circumstances prejudicial to the substantial rights of the accused, to admit the testimony of Grant Caskey, the last-named witness.    What the accused said, as testified to by this witness, may have been an expression of his sentiments and feelings at the time, and yet the words used were not of the kind that indicated either motive or purpose to commit crime.    But according to the weight of authority the testimony of the other witnesses of general threats made by the accused or of his purpose to do an act which would be criminal, the like of which followed, was admissible in order to establish "general malice and purpose to injure or kill some one," of which the deceased became the victim.    Whitaker v. Commonwealth, 13 Ky. Law Rep., 504.

And in such cases it is not necessary to show that the threats had reference to any particular individual.

In Hopkins v. Commonwealth, 50 Penn. St.; 9; 88 Am. Dec., 518, the rule is stated in the following language: "Nor was it necessary that the premeditated malice should have selected a victim.    If the jury believe that the prisoner had formed the deliberate design to kill somebody, and in pursuance of that purpose, within an hour after declaring it, did kill McMarity, the Commonwealth had the right to insist upon his conviction of murder in the first degree, and that they might thus insist they had a right to prove his declaration an hour before the deed."

Blackstone ranks "antecedent menaces" and "former

grudges" as evidence of malice prepense; and tells us, moreover, that "malice prepense is not so properly spite or malevolence to the deceased in a particular case, as any evil design in general, the dictate of a wicked, depraved and malignant heart." There are many other authorities to the same effect, a few only of which need be referred to. Am. & Eng. Ency. of Law, volume 4, page 866; Sparks v. Commonwealth, 89 Ky., 644; State v. King, 9 Mont., 445; Hodge v. State, 26 Fla., 11; Note to Wilson v. State (Florida), 17 L. R. A., 662.

But it may be observed that such evidence is proper to indicate the grade of the offense rather than to establish the fact of guilt, which is the view of Mr. Wharton, as expressed in 1 Wharton's Criminal Law, section 727. The trial court, therefore, did not err in admitting the testimony of Henry Rose, Coon Rose and Dan Caskey as to general threats made by the appellant before the killing.

But for the reasons we have indicated the judgment is reversed and cause remanded, with directions to set aside the verdict of the jury and to award a new trial, and for proceedings consistent with this opinion.