Larry N. WILLIS, Appellant/Cross–Appellee,

v.

COMMONWEALTH of Kentucky, Appellee/Cross–Appellant.

Nos. 2008–CA–001379–MR, 2008–CA–001442–MR.

Court of Appeals of Kentucky.

Oct. 9, 2009.

Ordered Published Feb. 19, 2010.

Matthew W. Boyd, Lexington, KY, for appellant/cross-appellee.

Jack Conway, Attorney General of Kentucky, James C. Shackelford, Assistant Attorney General, Frankfort, KY, for appellee/cross-appellant.

Before COMBS, Chief Judge; MOORE, Judge; LAMBERT,[1] Senior Judge.

*OPINION*

COMBS, Chief Judge.

Larry Willis appeals his conviction of one count of second-degree assault and one count of first-degree assault in Harrison Circuit Court. The Commonwealth cross-appeals. After our review, we affirm as to the appeal and dismiss the cross-appeal as moot.

1. Senior Judge Joseph E. Lambert sitting as Special Judge by assignment of the Chief Jus-

tice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

In April 2007, Ruby Willis initiated divorce proceedings against her husband, Larry Willis. On June 19, 2007, Larry followed Ruby to her friend's house in Garrard County. He was driving a rental car and asked Ruby to go with him to the nearby fairgrounds to talk. She declined, suggesting that instead they take separate vehicles to a BP gas station. When they left, Ruby's friend called law enforcement. Upon arriving at the BP, a state trooper and Garrard County Sheriff's deputy searched Larry's vehicle and found a gun, rope, a knife, and binoculars. Following this incident ("the BP incident"), Ruby obtained an Emergency Protective Order (EPO).

On August 15, 2007, in the course of an argument at their home in Harrison County, Larry pulled Ruby into the swimming pool ("the swimming pool incident") and held her head under water.[2] She fought until she wriggled loose and escaped his grasp, leaving her shoes in his hands. Ruby was afraid to leave that night; the next morning, she left for a hair appointment but did not return home again. The following weekend, Ruby and Larry made arrangements for her to collect her belongings from the residence.

On August 22, 2007, Ruby and four friends arrived at the house with a moving van. As Ruby packed boxes, Larry asked her to talk to him in the bedroom. After they came out of the bedroom, Larry told her friends to step outside in order to allow them some privacy. From the garage, Ruby's friends heard a gunshot followed by Ruby's pleading, "No, Larry!" They then heard another gunshot and called for an ambulance.

Ruby received two gunshot wounds—one in her shoulder and one in her abdomen. Both bullets exited her body through her back. She also sustained an abrasive, "mechanical" injury to her forehead. The cause of this injury was never determined. She was taken to the University of Kentucky Medical Center by helicopter. Treating personnel believed that she was breathing agonal (dying) breaths. Because of the oxygen deprivation caused by bleeding, Ruby was unconscious for nearly one month. She suffered aphasia, the loss of the ability to read or speak. Ruby has undergone extensive therapy to re-learn basic skills, such as writing, counting, and tying her shoes. At the time of trial, she was working on adding two-digit numbers. Her doctors doubt that she will ever recover to the level of her pre-shooting condition.

Larry admitted to police that he shot Ruby. A grand jury indicted him for one count of attempted murder and one count of assault in the first degree. At trial, the attempted murder charge was amended to second-degree assault. The jury convicted him on both charges and sentenced him to a ten-year sentence and a five-year sentence to be served concurrently. Larry subsequently filed this appeal.

As a preliminary procedural matter, the Commonwealth has drawn our attention to Kentucky Rule(s) of Civil Procedure (CR) 76.12(c)(iv), which provides that an appellate brief must include "ample references" to the record within the Statement of the Case. It contends that Larry has failed to fully comply with this rule. We agree that Larry's brief has fallen short of full compliance, but the Commonwealth has also slipped a bit in this regard. Therefore, we have undertaken a review of the reason-

2. At an earlier point in the sequence of violent attempts on Ruby's well-being, she reported a "beer incident" in which she believed that Larry fed her poisoned beer. This issue was suppressed prior to trial and has not been raised on appeal.

ably uncomplicated record in the interest of accommodating the appellate process.

■ Larry's first contention is that the trial court improperly allowed the Commonwealth to present testimony concerning the BP and the swimming pool incidents because they were inadmissible prior bad acts. We disagree.

Kentucky Rule(s) of Evidence (KRE) 404(b)(1) prohibits the admission of evidence of bad acts other than those charged **unless** they serve to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." KRE 103(1) instructs us to find error only if an erroneous admission of evidence has affected some substantial right of the party. Thus, we review to determine whether the trial court has abused its discretion. *Partin v. Commonwealth*, 918 S.W.2d 219, 222 (Ky.1996) (overruled on other grounds by *Chestnut v. Commonwealth*, 250 S.W.3d 288 (Ky. 2008)).

■ The Supreme Court of Kentucky has provided a three-pronged test when examining admission of evidence that is subject to KRE 404(b)(1). *Bell v. Commonwealth*, 875 S.W.2d 882, 889–91 (Ky. 1994). First, the trial court must determine whether evidence is "relevant for some purpose other than to prove the criminal disposition of the accused." *Id.* at 889. Second, it should look at whether the disputed bad act is "sufficiently probative of its commission by the accused to warrant its introduction into evidence." *Id.* at 890. Finally, the court must balance the evidence's probative value against its potential for prejudice. *Id.*

In this case, Larry admitted that he shot Ruby. At trial, he presented two defenses: of accident and of acting under extreme emotional distress (EED). The crimes with which he was charged were crimes of intent. Therefore, in order to prove its case, the Commonwealth had the burden of proving Larry's intent to harm Ruby and both the absence of accident and his lack of EED. *Benjamin v. Commonwealth*, 266 S.W.3d 775, 782 (Ky.2008).

Larry argues that the BP and swimming pool incidents clearly fail to demonstrate his intent to harm Ruby. However, he had ample opportunity to present his interpretations of his behavior as defenses to the jury. It was reasonable for a jury to infer that both incidents demonstrated his animosity toward Ruby. The BP incident involved a rental car that would have been unrecognizable to Ruby. That car contained a gun, a rope, a knife, and binoculars—all threatening and ominous objects in this context. In spite of Larry's account of the swimming pool incident as being light-hearted horseplay, he was fully aware that Ruby could not swim. Yet he pushed her into the deep end of the pool. He admitted that he had tried to scare her. Our Supreme Court has recently held that "[g]enerally, evidence of prior threats and animosity of the defendant against the victim is admissible as evidence of … intent." *Davis v. Commonwealth*, 147 S.W.3d 709, 722 (Ky.2005). *See also Sherroan v. Commonwealth*, 142 S.W.3d 7, 18 (Ky.2004).

Larry has failed to demonstrate that he was prejudiced to an extent that outweighed the relevance and probative value of this evidence. Under the case law construing KRE 404, we conclude that the court did not err in allowing the Commonwealth to submit evidence of these incidents.

■ Larry next argues that the trial court erred in its oral instructions to the jury. During its deliberations, the jury sent a note to the court asking if they could be hung on one charge but not the other; they also asked which charge had

been reduced. The court spoke to the jury and advised them to address each shot separately without reference to the nature of the charges originally arising from the shots. Larry claims he was unfairly prejudiced by this statement. Although Larry failed to preserve this issue by objecting at trial, we will nonetheless examine it for palpable error. Palpable error is one that affects a party's substantial rights and results in manifest injustice. Kentucky Rules of Criminal Procedure (RCr) 10.26.

 It is wholly proper for a court to explain orally its written instructions. *Allee v. Commonwealth,* 454 S.W.2d 336, 342 (Ky.1970). However, the court is not at liberty to amplify or to give supplemental instructions that are inconsistent with the indictment or that pertain to collateral information. *U.S. v. Samuels,* 308 F.3d 662, 669 (6th Cir.2002); *U.S. v. Combs,* 33 F.3d 667, 670 (6th Cir.1994). In this case, the court did not give any information that was not consistent with the indictment. Larry was charged with two counts that related to two different shots.

Larry contends that the court's instruction effectively eradicated his EED defense because part of his defense was that there was only one assault—one incident occurring from his emotionally distressed state. However, the written instructions gave the jury the opportunity to apply EED to either, to both, or to neither count. They retained the power to determine the nature of his guilt—if any. Witnesses to the shooting consistently recounted that after the first shot, there was a space of time during which Ruby pleaded for her life. Larry disputes that testimony. A jury could have reasonably concluded that even if the first shot had been unintentional, the second one might have been intentional. We are persuaded that no manifest injustice resulted from the court's instruction.

█ The Commonwealth has filed a cross-appeal in which it alleges as error a ruling by the trial court in excluding a witness. The court refused to allow a detective to remain seated during trial at the prosecutor's table as a witness for the Commonwealth.

We are affirming the conviction in this case on appeal, an outcome that essentially renders moot the subject matter of the cross-appeal. Nonetheless, we shall address the issue for the sake of discussion— a digression that we deem appropriate for historical and precedential purposes if not strictly necessary for adjudication. Case law sanctions such a course of discussion when an issue that would otherwise be deemed moot is "capable of repetition, yet evading review." *Lexington Herald-Leader Company, Inc. v. Meigs,* 660 S.W.2d 658, 661 (Ky.1983), citing *Nebraska Press Assn. v. Stuart,* 427 U.S. 539, 546, 96 S.Ct. 2791, 2796, 49 L.Ed.2d 683 (1976).

Kentucky Rules of Evidence (KRE) 615 sets forth the criteria for separation or exclusion of witnesses as follows:

> At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses and it may make the order on its own motion. **This rule does not authorize exclusion of:**
>
> (1) A party who is a natural person;
>
> (2) An officer or employee of a party which is not a natural person [*e.g.,* the Commonwealth] designated as its representative by its attorney; or
>
> (3) A person whose presence is shown by a party to be essential to the presentation of the party's cause.

(Emphasis added.) Thus, a direct exception was carved out to allow the detective to remain at counsel table. Clearly, the court erred in excluding the detective.

Exclusion of witnesses was originally covered by RCr 9.48, which was abolished in 2004 by Supreme Court rule (deleted effective January 1, 2005). It was replaced by KRE 615. Close to the time of the replacement, the Supreme Court held that case law formerly relevant to RCr 9.48 would be applied equally to KRE 615. *Smith v. Miller,* 127 S.W.3d 644, 646 (Ky. 2004).

In construing the police exception to the exclusion-of-witnesses rule, the Supreme Court waxed somewhat eloquent as follows:

> This practice ... is so well established that there is no need for a citation of authority and, as a matter of fact, it has been the law of this Commonwealth for so long that the mind of man runneth not to the contrary that in a criminal case the trial judge, in his discretion, may allow one witness to remain in the courtroom to aid the Commonwealth's Attorney.

*Brewster v. Commonwealth,* 568 S.W.2d 232, 236 (Ky.1978). The colorful language of *Brewster* cited to a judicial discretion that has now been foreclosed by mandatory rule.

In summary, we affirm the conviction on appeal and dismiss the cross-appeal as moot.

ALL CONCUR.