# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

**THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.**

RENDERED: OCTOBER 23, 2025
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0486-MR

GARY LEE MORGAN      APPELLANT

ON APPEAL FROM BOONE CIRCUIT COURT
V.      HONORABLE RICHARD A. BRUEGGEMANN, JUDGE
NO. 23-CR-00441

COMMONWEALTH OF KENTUCKY      APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**AFFIRMING IN PART AND VACATING IN PART**

Gary Lee Morgan entered a plea pursuant to *North Carolina v. Alford*[1] declining to contest his guilt as to two counts of rape in the first degree and was sentenced to a total of 40-years' imprisonment. Morgan now appeals his sentence as a matter of right[2] and alleges two errors: (1) the trial court erred in allowing the victim's father to speak and make incendiary statements at sentencing; and (2) the trial court erred in imposing jail fees against Morgan without hearing evidence that a jail fee reimbursement program had been adopted by the county jailer. After careful review, we find no error in the victim's father's impact statement, but reverse as to the imposition of jail fees.

---

[1] 400 U.S. 25 (1970).

[2] KY. CONST. § 110(2)(b).

## FACTUAL AND PROCEDURAL BACKGROUND

In 2022, Morgan found himself living with his friend, Daniel, and Daniel's 11-year-old daughter, S.H. Morgan and S.H. were close and Morgan was present for many of S.H.'s most important formative moments. Unfortunately, Morgan's affection was not of the platonic variety; instead, Morgan was grooming S.H. for sexual abuse at his hands.

Morgan sexually assaulted S.H. multiple times in the latter half of 2022. In 2023, S.H.'s boyfriend told her parents about the abuse and they contacted police, who in turn arrested Morgan. Morgan was indicted for two counts of rape in the first degree, victim under 12; sodomy in the first degree, victim under 12; and two counts of sexual abuse in the first degree, victim under 12. Morgan ultimately entered an *Alford* plea in exchange for the Commonwealth amending the two rape counts to drop the enhancement for a victim under 12, and dismissing the remaining charges. At sentencing, S.H. spoke from the trial judge's chambers detailing the abuse and the effect it had on her life. Following this, Daniel spoke passionately about Morgan, describing him as a "monster," hoping he suffers in the afterlife, and imploring the judge to sentence Morgan to the maximum possible sentence. After consideration of these statements, the pre-sentence investigation report and sex offender evaluation, and two letters of support for Morgan, the trial judge sentenced Morgan to the maximum: 40-years' imprisonment. Morgan now appeals this sentence.

## ANALYSIS

On appeal, Morgan alleges two claims of error. First, he claims error stemming from Daniel's statement during sentencing. The claim has two elements: (1) Daniel did not have a statutory right to be heard under Marsy's Law and KRS[3] 421.500; and (2) even if Daniel was able to speak, his statement went beyond the permissible bounds of victim impact testimony. Morgan also claims error in the trial court's imposition of jail fees in the absence of testimony showing the existence of a jail fee reimbursement policy adopted by the county jailer. Neither issue is preserved, so Morgan requests palpable error review pursuant to RCr[4] 10.26. "Under this rule, an error is reversible only if a manifest injustice has resulted from the error. That means that if, upon consideration of the whole case, a substantial possibility does not exist that the result would have been different, the error will be deemed nonprejudicial." *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006) (quoting *Graves v. Commonwealth*, 17 S.W.3d 858, 864 (Ky. 2000)). We address each claim in turn.[5]

---

[3] Kentucky Revised Statutes.

[4] Kentucky Rules of Criminal Procedure.

[5] Although not an issue raised in briefing, we take this opportunity to remind the Commonwealth of our rules regarding citation to unpublished opinions contained in Rule of Appellate Procedure ("RAP") 41. Particularly, we direct the Commonwealth to RAP 41(A)(3), permitting citation to unpublished opinions only where, "there is no published opinion of the Supreme Court or the Court of Appeals that would adequately address the point of law argued by the party[.]" The Commonwealth cites a large number of unpublished cases in its brief, including cases presenting general principals of law for which there are easily-located published cases with the same holding. We implore the Commonwealth to be more mindful of its citations in the future.

**1. The trial court did not err in allowing the victim's father to provide a victim impact statement.**

At Morgan's sentencing hearing, the trial judge allowed Daniel, the victim's father, to speak at length about the effect Morgan's abuse has had on S.H. and her family, and about the various deficiencies of character present in Morgan and how those deficiencies should be rectified. We reproduce some representative passages below:

> I'm sure most people in this courtroom today have at some point heard the saying or phrase, heaven on earth, but I'd like to take a few minutes of your time and give some gruesome details about our version of hell on earth. Imagine getting the life-shattering news one day, completely out of the blue, that one of the most trusted people that has not only been a part of the majority of your life, but one that your family has taken on as their own, is a sick and twisted, child-molesting monster. A predator who has been conditioning and grooming every single person around them to think that they are the polar opposite of the absolute evil that really lives deep inside of them. Someone you looked at as a brother who sat next to you during all your daughter's birthday parties, watching her grow from a newborn baby to a toddler to a little girl. Sharing special family moments and events, passing the mashed potatoes at the Thanksgiving dinner table and opening presents on Christmas Day.
>
> . . . .
>
> But knowing Gary Morgan for most of my life, I know a lot of his personal beliefs. One of those beliefs is how strongly he felt about the idea that God doesn't exist. Therefore, heaven or hell is not a real thing. We've had many conversations over the last 25 plus years about this and every time he stood by his beliefs that Jesus and God was a made up fictional fairytale to trick people into doing what's right and to be good or to be good unto others. I could never convince him otherwise no matter how many times this subject came up. I've never been one to force my own beliefs my own personal beliefs onto someone, but I could never grasp the hatred towards the idea that God is real and that genuine good people do walk beside you and I every day with the core value and belief do unto others.

4

I bring this up because I do believe in God. I do believe there is a heaven and in this specific case most importantly I do believe there is a hell. I do pray to you your honor that you will deliver the utmost harshest sentencing that you have the legal power to deliver onto one of the devil's friends here today. But what gives me the most satisfaction is knowing that hell is in fact a real place. A place designated for real life monsters. Not to serve a 10 or 40 year sentence but one where the sinister evil will roast in the hottest lake of fire specifically reserved for the worst of the worst mankind has to offer. Child molesters. I pray that I'm one to make it to heaven after I leave this life, but if what I've said here today lands me in hell, I promise I'll be coming to find you and I'll make the devil himself look like a goddamn saint.

. . . .

In closing, f--k you, Gary Lee Morgan, on behalf of me and anyone else who you ever thought gave a s--t about you and your pathetic existence. We all hope to see you suffer, we get the maximum years allowed until you are taken from this planet and served out the rest of your sentence delivered by God himself, burning in hell on that lake of fire for eternity.

Morgan primarily argues that Daniel did not have a right to speak at the sentencing under Marsy's Law because he was not the victim and, although he was the victim's father, the court did not designate him as the minor victim's representative. Morgan further contends that even if Daniel were allowed to speak at sentencing, the content of his statement was so inflammatory as to constitute palpable error. For the following reasons, we hold Daniel was permitted to provide a statement and the content of that statement did not create manifest injustice.

Section 26A of the Kentucky Constitution, a provision better known as Marsy's Law, was ratified in 2020 to provide certain rights to victims of crime. Among those rights is "timely notice of all proceedings and to be heard in any

proceeding involving a release, plea, sentencing, or in the consideration of any pardon, commutation of sentence, granting of a reprieve, or other matter involving the right of a victim other than grand jury proceedings[.]" KY. CONST. § 26A. This right does not extend to all those with a relationship to the crime, but only to victims, as defined in KRS 421.500(1)(a). That provision provides,

> As used in KRS 421.500 to 421.575, "victim" means an individual directly and proximately harmed as a result of:
>
> 1. The commission of a crime classified as a felony; a misdemeanor involving threatened or actual physical injury, harassment, or restraint; a misdemeanor involving a child or incompetent person; or a misdemeanor involving a sexual offense or a trespass; or
>
> 2. Conduct which, if committed by an adult, would be classified as a felony or a misdemeanor described in subparagraph 1. of this paragraph.
>
> If the victim is a minor, incapacitated, or deceased, "victim" also means one (1) or more of the victim's spouse, parents, siblings, children, or other lawful representatives which shall be designated by the court unless the person is the defendant or a person the court finds would not act in the best interests of the victim.

KRS 421.500(1)(a).

We have previously interpreted the final paragraph of KRS 421.500(1)(a) in line with Morgan's argument. In *Robertson v. Commonwealth*, 677 S.W.3d 309, 314 (Ky. 2023), we broke down the provision as follows: "Under Kentucky Revised Statute (KRS) 421.500(1)(a), '[i]f the victim is a minor. . ., "victim" also means one (1) or more of the victim's. . . parents. . . which shall be designated by the court. . . .'" Under this interpretation, parents of minor victims, as well

6

as "other lawful representatives" must be designated by the court in order to receive the rights provided under Marsy's Law.

The record reveals no indication that Daniel was designated by the court as a victim in this case. Accordingly, he did not have the right under Marsy's Law to speak at sentencing. However, while this would constitute error during the guilt phase of a jury trial, *see McGuire v. Commonwealth*, 368 S.W.3d 100, 111-12 (Ky. 2012) (holding the trial court erred in allowing an individual not included in the list of statutory victims to give impact testimony during the guilt phase), this is not the case during final sentencing. During that hearing,

> the person designated as the "victim" under KRS 421.500 has the absolute right to submit a victim impact statement and have it considered by the trial court prior to any sentencing decision. This does not remove from the trial court the discretion to consider other impact statements from other individuals affected by the crime.

*Sherroan v. Commonwealth*, 142 S.W.3d 7, 24 (Ky. 2004). Although Daniel did not have a constitutional right to provide a statement during sentencing, the trial court properly exercised its discretion in permitting the father of the victim to provide impact testimony about the effect Morgan's actions had taken on him and his family.

Because we discern no error in allowing Daniel to speak generally, we turn to whether the content of his statement crossed the bounds of propriety. Victim impact statements are commonly meant to include "a description of the nature and extent of any physical, psychological, or financial harm suffered by the victim or victims[.]" KRS 532.055(2)(a)7. "[A]n understandable, expected amount of emotion is not error, much less palpable error," *Elery v.*

7

*Commonwealth*, 368 S.W.3d 78, 99 (Ky. 2012), but certain acts, such as mentioning uncharged conduct, *see Johnson v. Commonwealth*, 680 S.W.3d 814, 826 (Ky. 2023), or giving sentencing recommendations, *see Hilton v. Commonwealth*, 539 S.W.3d 1, 18-19 (Ky. 2018), can constitute error.  Morgan identifies two sources of potential impropriety, the use of religious language and Daniel's request that Morgan receive the "maximum years allowed."  We hold the former statements were not error and the latter was not palpable error.

As to the former, we have acknowledged that references to religion can sometimes go too far—as when those references mentioned the imposition of the death penalty—but we have largely permitted a victim's religious beliefs to be a proper subject of victim impact testimony.  *Johnson*, 680 S.W.3d at 825-26 (Holding bible passages calling for the death penalty as punishment for murder to be improper, but otherwise, "[w]e cannot reasonably expect, much less require, a victim not include their religious beliefs in such a scenario.").  Daniel's statements are permissible outpourings of religious belief.  While he stated his belief (and desire) that Morgan's immortal soul should spend eternity in the depths of hell, such a statement cannot be reasonably understood as imploring the judge to sentence him to such punishment.  Indeed, Daniel acknowledged that he believes the ability to pronounce such a sentence lies with an authority higher than the temporal courts.  Daniel's statements were impassioned, to be sure, but they nevertheless fell within what we would expect

8

from a father whose daughter had been sexually abused by the father's close friend and were permissible regardless of their religious coloring.

As to the latter statements, Daniel's call for the maximum sentence, we find the statement to have been error, but it was far from palpable.[6]  In *Hilton*, 539 S.W.3d at 18-19, we held that "sentencing  recommendations made by the victim and victims' families in this case were improperly admitted" during the penalty phase of a trial.

> While KRS 532.055(2)(a)(7) permits testimony on the impact of the crime upon the victim, by including the "nature and extent of any physical, psychological, or financial harm suffered," expanding this discussion of victim impact to permitting the recommendation of a punishment for the defendant constitutes too broad a reading of the statute.

*Id.* at 19.  Even though the situation here is different procedurally—Daniel's recommendation was made to a judge during final sentencing and not to a jury during the penalty phase of a trial—the underlying logic of *Hilton* remains persuasive, particularly where there was not a recommended sentence by either a jury or the Commonwealth.

Although error, the statement still did not rise to a level that would merit reversal for manifest injustice.  *Hilton* is once again instructive.  There, the prosecutor asked multiple victims explicitly, "How long would you like to see the defendant in custody?" and each expressed a desire to see him receive the

---

[6] We acknowledge that Daniel made two references to sentencing, the one discussed in this paragraph, and his observation that Morgan's true punishment would begin after he served a "10 or 40 year sentence."  We do not interpret that statement as a recommendation; rather, Daniel was merely reciting the possible sentencing range for Morgan's crimes.

maximum. *Hilton*, 539 S.W.3d at 17. We found those multiple statements to be error, but found them to be harmless because "[b]ased on Hilton's criminal history and the serious offenses he was convicted of in this case, we can say with fair assurance that the jury's verdict was not swayed by the testimony of Harig and the family members of the victims." *Id.* at 19. In short, we declined to reverse under our much more lenient harmless error standard for multiple instances of improper testimony before a jury because of the case against the defendant.

Here, we are faced with a single, unprompted, passing recommendation made to a judge that was unpreserved for review. We recognize the fact that because Morgan plead guilty pursuant to *Alford* we might reasonably question the strength of the evidence against him, but regardless he still pled guilty to two counts of rape in the first degree. The trial judge sentenced Morgan in accordance with the statutory range for such crimes. We cannot say that Daniel's recommendation weighed heavier upon the mind of the judge than the statement of the victim herself. Accordingly, we do not hold that the recommendation was palpable error.

## 2. The imposition of jail fees was improper.

Morgan next argues the trial court erred in imposing jail fees as a part of his sentence without evidence "that a jail fee reimbursement policy has been adopted by the county jailer with approval of the county's governing body in accordance with KRS 441.265(2)(a)," *Capstraw v. Commonwealth*, 641 S.W.3d 148, 161-62 (Ky. 2022), and so the fees should be vacated. The

10

Commonwealth concedes that jail fees were erroneously imposed, but it contends the proper remedy is remand to give the Commonwealth the opportunity to provide the necessary proof. Based on our previous treatment of this issue in *Capstraw* and *Ford v. Commonwealth*, 709 S.W.3d 203, 206 (Ky. 2025), we hold the proper remedy is to simply vacate the improperly imposed fees.

In *Capstraw*, the titular defendant was found guilty of murder and sentenced to 50 years. In Capstraw's sentencing order, he was "ordered pursuant to KRS 411.265 and KRS 532.356 to reimburse costs & fees of incarceration in the amount of record with the Hardin County Jailer as of the date of sentencing. The costs & fees shall be reimbursed to the Hardin County Jailer." *Capstraw*, 641 S.W.3d at 161. Capstraw argued this was done in error because "there was no evidence of record that the Hardin County jail had adopted a jail fee reimbursement policy." *Id.* In another similarity to Morgan's situation, the Commonwealth in *Capstraw* also conceded he was ordered to pay those fee erroneously. In resolving the question, we noted that a number of unpublished decisions from this Court as well as the Cour of Appeals held that in the absence of evidence of a jail reimbursement policy, jail fees could not be imposed upon a defendant. *Id.* (citing *Weatherly v. Commonwealth*, 2017-SC-000522-MR, 2018 WL 4628570, at *10 (Ky. Sept. 27, 2018); *Melton v. Commonwealth*, 2016-SC-000552-MR, 2018 WL 898307, at *12 (Ky. Feb. 15, 2018); *Campbell v. Commonwealth*, 2020-CA-0690-MR, 2021 WL 1051590 (Ky. App. Mar. 19, 2021); *Jackson v. Commonwealth*, 2018-CA-000543-MR, 2019

11

WL 2246172 (Ky. App. May 24, 2019); *Bishop v. Commonwealth*, 2017-CA-001793-MR, 2019 WL 103924 (Ky. App. Jan. 4, 2019)). We used the opportunity presented in *Capstraw* to give the bar clear guidance on the matter and "[emphasized] that in order to impose jail fees against a criminal defendant during sentencing, there must be some evidence presented that a jail fee reimbursement policy has been adopted by the county jailer with approval of the county's governing body in accordance with KRS 441.265(2)(a)." *Capstraw*, 641 S.W.3d at 161-62. Ultimately, "because there was no such evidence presented during Capstraw's sentencing, the jail fees imposed against him must be vacated." *Id.* at 162. We did not subsequently remand the case for the adduction of evidence as to the existence of such evidence.[7]

Three years later, we rendered our opinion in *Ford*. There, "the only evidence in this record regarding a jail reimbursement policy in Carlisle or McCracken County was the stipulation by Ford that those two counties had an agreement whereby Carlisle County would pay McCracken County twenty-six dollars a day for housing inmates on its behalf." *Ford*, 709 S.W.3d at 204. We held the stipulation was insufficient to meet the evidentiary burden of because "[a]n agreement between counties concerning reimbursement for housing prisoners is not the same as a jail reimbursement policy promulgated by the county jailer with the approval of county's governing body, pursuant to KRS 441.265(1)(a)." *Id.* at 206.

---

[7] Nor did any of the unpublished cases cited in *Capstraw*.

> If the jailers of a given circuit have not promulgated a jail reimbursement policy pursuant to KRS 441.265(2)(a), or if the governing bodies of the counties constituting that circuit have not approved said policies, then the trial court must accept that fact and accept that it may not impose jail fees in the applicable cases. If, however, a jail reimbursement policy exists and has been approved by the appropriate governing body in accordance with KRS 441.265(2)(a), then there is no excuse for evidence of such not to be in the record. That is what *Capstraw* unambiguously requires, and we reaffirm it.

*Id.* We accordingly vacated the portion of the sentencing order imposing jail fees, but again did not remand for the taking of additional evidence on the matter. *Id.*

Our review of the cases discussing the jail fee reimbursement policy reveals only two unpublished Court of Appeals decisions wherein the case was remanded for additional proceedings regarding the policy. *Frazier v. Commonwealth*, 2022-CA-0484-MR, 2023 WL 1485344 (Ky. App. Feb. 3, 2023); *Warren v. Commonwealth*, 2017-CA-001623-MR, 2018 WL 6434780 (Ky. App. Dec. 7, 2018). In all other instances, that portion of the sentencing agreement was simply vacated. We can discern no reason, and the Commonwealth provides no compelling reason, to hold against the weight of the overwhelming majority of cases on this occasion.

## CONCLUSION

For the foregoing reasons, the sentence of the Boone Circuit Court is affirmed, but the portion of the judgment imposing jail fees is hereby vacated.

All sitting. All concur.

13

COUNSEL FOR APPELLANT:

Kathleen K. Schmidt
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Joseph C. White
Assistant Attorney General